**In the United States District Court**
**For the Central District of Illinois**
**Peoria Division**

| | | |
|---|---|---|
| DARRELL RADSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| BRADLEY UNIVERSITY, | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

# Complaint

Now Comes the Plaintiff, DARRELL RADSON ("Radson"), by and through his undersigned counsel, John A. Baker, and in support of his complaint against BRADLEY UNIVERSITY ("Bradley"), states as follows:

## I. Jurisdiction and Venue

1. Radson maintains that Bradley has violated his rights under Title VII of the Civil Rights Act of 1964. Specifically, he alleges that he was retaliated against in violation of the anti-retaliation provisions of that law. In relevant part, that provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . . , to discriminate against any individual, . . . . , because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C.A. § 2000e-3(a).

2. Radson's claim is that he was retaliated against in two different respects. In Count I of his complaint he alleges that he engaged in protected activity when he opposed

discrimination on the basis of national origin. Count I contends that he was retaliated against because he expressed these concerns and then he was involuntarily removed as the dean of Bradley's Foster College of Business (the "Foster College"). Count II alleges that Radson was further retaliated against when he, subsequent to his removal as dean, complained that his removal violated Title VII. Specifically, he alleges that he was retaliated against because Bradley refused to speak with potential employers, as is typical, about Radson's employment as the dean of the Foster College.

3. Radson's lawsuit is premised upon a federal statute vesting this Court with jurisdiction to hear his claim.

4. The allegations in this lawsuit relate to Radson's employment at Bradley. Radson worked for Bradley in Peoria, Illinois. As a result, venue is appropriate in this Court.

## II. Parties

5. Radson is an adult resident of Peoria County, Illinois.

6. Bradley is an institution of higher learning that is located in Peoria, Illinois. At all times relevant to this lawsuit it has employed in excess of 100 people.

## III. Facts Common to Both Claims of Retaliation

7. On December 14, 2011, Radson was offered the position of dean of Bradley's Foster College, effective May 1, 2012. In addition, Radson was also to become a tenured professor in the Foster College.

8. Radson accepted the offer and was installed as the Foster College's dean effective May 1, 2012.

9. Prior to his removal as dean of the Foster College Radson had performed his job duties effectively and his leadership was well received throughout the university community.

Radson's accomplishments included the following:

- Obtaining a prestigious ranking by *Bloomberg Businessweek* (the largest increase in the rankings among all business schools).
- Reaffirmation of the School's AACSB accreditation in both business and accounting.
- Revitalization and reformation of the College's National Council of Advisors including recruiting of new members of which two are current members of the Bradley's Board of Trustees.
- Successful fundraising, in collaboration with the Dean Lex Akers, for the new Business and Engineering Complex and enhanced relations with the community and alumni that will ultimately culminate in the completion of this new facility.
- Successful College relocation and transition to Campustown.
- Publication of the new College magazine *Experience* providing improved communication and engagement with alumni and donors.
- Increases in the number of undergraduate majors for five straight years (from 712 in Fall 2012 to 844 in Fall 2017).
- Redesign of the College's undergraduate core curriculum providing increased opportunities for students to double major or add minors to their major.
- Design and implementation of innovative and unique curricula with the college of engineering.
- Redesign of the College's MBA curricula.
- Design of a new major in data analytics.
- Increase in the School's net contribution to the University (net revenue minus operating expenses) by 23.1% from FY 2013 ($6.8 million) to FY 2017 ($8.3 million).

10. In December of 2016 the Foster College began a search for an assistant professor in its Management and Leadership department.

11. In the spring of 2017 the chair of the Management and Leadership department formed a search committee for the assistant professor position.

12. On August 15, 2017, Radson was informed by the search committee chair that the committee had identified a preferred candidate for the position.

13. On August 16, 2017, Radson met with the search committee chair to discuss the committee's recommendation and how it had ranked the candidates. During that meeting the chair expressed his strong feelings that Bradley faculty must "speak clear English" since that was

Page 3 of 9

what the students "pay for."

14. Radson was troubled by the chair's statements regarding speaking "clear English."  Radson was concerned that this statement reflected the possibility of bias on the committee's part against individuals who were not born in the United States.

15. Radson opposes discrimination on the basis of national origin.

16. As the hiring process continued Radson became even more alarmed when he reviewed the committee recommendations and saw how the individual candidates were ranked. The committee recommendations evaluated each candidate on the basis of "research," "teaching," and "fit."  While Radson strongly agreed that hiring decisions should be premised upon "research" and "teaching," he had significant concerns when he looked more closely at the "fit" category.  As Radson reviewed the committee's work it became clear that the individuals who were evaluated poorly in the "fit" category were the candidates who had names that made it seem likely that they were not born in the United States.

17. Upon reviewing this information Radson was alarmed that there could be discrimination based upon national origin that was guiding the recommendations of some members of the committee.

18. Owing to his concerns about potential discrimination, Radson spoke with his boss, Provost Walter Zakahi, in November 2017 about his concerns.

19. Prior to Radon's expressions of his concerns in November of 2017, no one from Bradley's leadership had ever expressed any concerns with his performance.  Indeed, all job performance evaluations he had received reflected that he was performing his duties at a very high level.

20. On December 7, 2017, Radson further outlined his views in an email to Zakahi

wherein he explained his concerns about the possibility of national origin discrimination in the hiring process.

21. On January 17, 2018, Zakahi met with the search committee and Dr. Radson. Zakahi questioned the search committee on their evaluation process. Zakahi openly expressed his concern with using "fit" to evaluate candidates since research has revealed this can result in evaluation bias and prevent the increase in faculty diversity.

22. Ultimately, Zakahi reversed course and recommended that Radson hire the candidate who had been recommended by the committee. Despite the fact that he disagreed, Radson acquiesced and made the recommendation that this individual be hired the following day.

23. In an email on January 18, Zakahi told the search committee, "Even though we have come to an agreeable solution in this instance, I remain very concerned about the search process at Bradley. I am worried about our ability to make meaningful progress on diversifying the faculty and staff. In this instance I do understand how the committee used 'fit' as a criteria for this search and once it was explained to me I was more comfortable with how the committee applied it in this instance. I would, however, advise against using that terminology in the future as 'fit' is often mentioned by diversity and inclusion experts as a criteria that can be used to exclude underrepresented groups."

24. On January 18, 2018, Zakahi advised Radson that there were concerns about his leadership of the Foster College. These supposed concerns stemmed from Radson's concerns that there might be unlawful national discrimination in the hiring process.

25. On January 26, 2018, Zakahi advised Radson that he was being removed from his position as dean of the Foster College. Zakahi wrote that "[u]pon my evaluation of your

leadership performance and in determining the leadership needs of the Foster College of Business, I have decided that your administrative assignment as dean is ended effective immediately."

26. After his removal Radson retained counsel and expressed his views that his removal from his position as dean stemmed from his opposition to national origin discrimination that he had previously expressed. Radson outlined this concern in a letter from his attorney to Bradley's attorney on February 20, 2018.

27. As a result of his removal from his position Radson began searching for new job opportunities in higher education almost immediately.

28. When an individual in higher education is searching for a different position it is common for the potential new employer or a search firm to contact the employee's supervisor to discuss the applicant. As a matter of course the current employer agrees to discuss the employee with the potential new employer. This is also standard practice at Bradley.

29. In late February Radson contacted Zakahi and asked that he speak with a representative of a search firm who was evaluating candidates for a university it represented.

30. Zakahi, on February 27, 2018, notified Radson that he would not speak with a search firm representative on Radson's behalf. Subsequently Bradley indicated that because Radson had threatened to bring a lawsuit against Bradley stemming from his removal as dean of the Foster College, Zakahi would only speak with potential employers or their representatives if Radson was willing to sign a release of all claims against Bradley.

31. On March 26, 2018, Radson filed a complaint with the United States Equal Employment Opportunity Commission (Charge No. 440-2018-04107).

32. On July 19, 2018, Radson received a notice from the EEOC advising him of his rights to file a lawsuit in federal court within 90 days.

# Count I

33. Paragraphs 1-32 are incorporated herein.

34. Radson engaged in actions protected by the anti-retaliation provisions of Title VII when he opposed discrimination on the basis of national origin as outlined in the above paragraphs.

35. Had Radson not expressed his opposition to national origin discrimination he would not have been removed as dean of the Foster College.

36. As a result of his removal from his position, Radson has been retaliated against in violation of Title VII.

37. Radson has sustained both economic and non-economic losses as a result of this action. This has included a loss in income, emotional distress, and damage to his reputation.

Wherefore, Radson respectfully requests that this Court enter judgment in his favor and against Bradley and provide the following relief:

(A) Enter an order finding that Radson's rights under the anti-retaliation provisions of Title VII have been violated.

(B) Issue an order awarding Radson his damages to compensate him for both economic and non-economic damages he has sustained.

(C) Issue an order awarding him punitive damages to the extent permitted by law.

(D) Issue an order directing Bradley to pay Radson's reasonable attorney fees associated with bringing this lawsuit.

(E) Other relief that this Court deems appropriate under the circumstances.

# Count II

38. Paragraphs 1-32 are incorporated herein.

39. Radson engaged in actions protected by the anti-retaliation provisions of Title VII when, on February 20, 2018, he wrote complaining that he had been discriminated against when he was removed from his position as dean of the Foster College.

40. As a result of Radson engaging in protected activity he was retaliated against. Specifically, Zakahi refused to speak with potential employers about his work at Bradley.

41. The refusal to speak with potential employers was significant and, in the academic community, it is the type of activity that would dissuade a reasonable person from engaging in actions protected by Title VII.

42. Had Radson not engaged in protected activity Zakahi would have spoken with potential employers.

43. Radson has sustained both economic and non-economic losses as a result of this action. This has included a loss in income, emotional distress, and damage to his reputation.

Wherefore, Radson respectfully requests that this Court enter judgment in his favor and against Bradley and provide the following relief:

(A) Enter an order finding that Radson's rights under the anti-retaliation provisions of Title VII have been violated.

(B) Issue an order awarding Radson his damages to compensate him for both economic and non-economic damages he has sustained.

(C) Issue an order awarding him punitive damages to the extent permitted by law.

(D) Issue an order directing Bradley to pay Radson's reasonable attorney fees associated with bringing this lawsuit.

(E) Other relief that this Court deems appropriate under the circumstances.

**Radson requests a jury trial on all claims**

                                                    Darrell Radson


                                       By: /s/ *John A. Baker*
                                                 His Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:        (217) 522-3445
Facsimile:         (217) 522-8234
Email:              jab@bbklegal.com